UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARCUS HARVIN, et al., | : | |
|     Plaintiffs, | : | |
| | : | |
|     v. | : | Case No. 3:16-cv-1616(VAB) |
| | : | |
| CAROL CHAPDELAINE, et al., | : | |
|     Defendants. | : | |

## **RULING AND ORDER**

Plaintiffs, Marcus T. Harvin, Nirone Hutton, Jose Ramos and Cordell L. Woolfolk, are currently confined at the MacDougall Correctional Institution in Suffield, Connecticut ("MacDougall").  They have filed this civil rights action *pro se* and *in forma pauperis* under 28 U.S.C. § 1915 against Warden Carol Chapdelaine, Maintenance Supervisor Street, Commissioner Semple, Counselor Supervisor Davis and the Royal Flush company.  ECF No. 1. Plaintiffs assert claims related to alleged restrictions on the use of the toilets in their cells, alleged unsanitary practices related to the distribution of meals, the use of portable toilets, and alleged limited access to showers.

## I.    **Exhaustion Requirement**

As a preliminary matter, the Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust administrative remedies before filing a federal lawsuit related to prison conditions.  42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.")  This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks.  *See Booth v. Churner*, 532 U.S. 731, 741 (2001)  ("[W]e think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.").  Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court.  *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion requires "using all steps that the agency holds out and doing so properly (so that the agency addresses the issues on the merits)" and "demands compliance with agency deadlines and other critical procedural rules").

Meeting the exhaustion process after a federal action has been filed does not, therefore satisfy the exhaustion requirement.  *See Neal v. Goord*, 267 F.3d 116, 122 (2d Cir. 2001) ("To begin, the plain language of § 1997e(a), providing that no action shall be brought until such administrative remedies as are available are exhausted, suggests that exhaustion prior to commencement of a § 1983 action is mandated.") (internal quotation marks omitted).  "[C]ourts must take care not to frustrate the policy concerns underlying § 1997e(a) by allowing inmate-plaintiffs to file or proceed with lawsuits before exhausting administrative remedies."  *Id.* Special circumstances do not excuse an inmate's failure to meet the exhaustion requirement. *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) ("The PLRA's history (just like its text) thus refutes a "special circumstances" exception to its rule of exhaustion.").  An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable.  *See id.* ("[T]he PLRA contains its own, textual exception to mandatory exhaustion. Under § 1997e(a), the

exhaustion requirement hinges on the 'availability' of administrative remedies.") (internal quotation marks omitted).

Failure to exhaust administrative remedies is an affirmative defense, and an inmate plaintiff need not plead it in their complaint. *See Jones v. Bock*, 549 U.S. 199, 216 (2007) ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specifically plead or demonstrate exhaustion in their complaints."). "However, a district court still may dismiss a complaint for failure to exhaust administrative remedies if it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams v. Correction Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citing *Jones*, 549 U.S. at 215). Before a district court may dismiss a claim for failure to exhaust administrative remedies, however, the court must afford the inmate notice and an opportunity to be heard. *See Mojia v. Johnson*, 351 F.3d 606, 610-11 (2d Cir. 2003).

The administrative remedies for the State of Connecticut Department of Correction are set forth in Administrative Directive 9.6, entitled Inmate Administrative Remedies, effective August 15, 2013 ("Administrative Directive 9.6"). STATE OF CONNECTICUT DEPARTMENT OF CORRECTION, ADMINISTRATIVE DIRECTIVE 9.6: INMATE ADMINISTRATIVE REMEDIES (2013), http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0906.pdf**.** The type of remedy available to an inmate depends on the nature of the issue or condition experienced by the inmate or the decision made by correctional personnel.

 For all matters relating to any aspect of a prisoner's confinement that are subject to the Commissioner's authority, and that are not specifically identified in Sections 4(B) through 4(I) of Administrative Directive 9.6, the applicable remedy is the "Inmate Grievance Procedure." *Id.* §

3

4.  Thus, claims regarding conditions of confinement, such as sanitation and shower use, are subject to the Inmate Grievance Procedure.

Section 6 of Administrative Directive 9.6 lays out the Inmate Grievance Procedure.  *Id.* § 6.  Under the Inmate Grievance procedure, an inmate must first attempt to resolve the matter through an "Informal Resolution" procedure.  He or she may attempt to verbally resolve the issue with an appropriate staff member or supervisor.  *See id.* at § 6(A).  If attempts to resolve the matter orally are not effective, the inmate must submit a written request via "CN 9601, Inmate Request Form," addressed to the appropriate staff member and deposited in the appropriate collections box.  *Id.*  The inmate will receive a response to the written request form "within 15 business days from receipt of the written request."  *Id.*  If all attempts to resolve the matter through the "Informal Resolution" procedure are unsuccessful, an inmate may then file a Grievance for "Level 1 Review."  *Id.* at § 6(C), (H)-(I).

The Level 1 grievance must be filed within 30 calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the written request to resolve the matter informally, or explain why the response is not attached.  *See id.* at § 6(C).  The Unit Administrator makes decisions regarding Level 1 grievances.  *Id.* at § 6(I).  The Unit Administrator must respond to the Level 1 grievance, in writing, within 30 business days of his or her receipt of the grievance, or the inmate may appeal for "Level 2 Review."  *Id.*

The inmate may appeal either the disposition of the grievance by the Unit Administrator or the Unit Administrator's failure to dispose of the grievance in a timely manner to "Level 2 Review."  *See id.* at § 6(G), (I).  The Level 2 appeal must be filed within five calendar days from

4

the inmate's receipt of the decision on the Level 1 grievance.  *See id.* at § 6(K).  Level 2 appeals of are reviewed by the appropriate District Administrator.  *Id.*  The District Administrator must respond to the Level 2 appeal, in writing, within 30 business of receipt of the appeal.  *See id.*

Level 3 appeals are restricted to challenges to department policy, the integrity of the grievance procedure or Level 2 appeals to which there has been an untimely response by the District Administrator.  *See id.* at § (6)(L).  A Level 3 appeal must be filed within five calendar days from the inmate's receipt of the decision on the Level 2 appeal.  *See id.*  A Level 3 appeal is reviewed by the Commissioner of Correction or his or her designee.  *See id.*  The Commissioner or his or her designee shall respond, in writing, within 30 business days of receipt of the Level 3 appeal.  *Id.*

Assuming without deciding that the Plaintiffs' claims are not among the categories of disputes that are eligible for Level 3 appeal in the absence of an untimely or absent response to a Level 2 appeal, the State of Connecticut Department of Correction administrative remedies available to Plaintiffs would likely take at least 75 business days to completely exhaust.  Had the Plaintiffs began, as the administrative procedure requires, with the informal resolution process and needed to escalate their grievance to a written request, the Department of Correction staff member would need to respond to that written request within 15 business days.  Had the response to the written request been unsatisfactory to Plaintiffs or untimely or absent, they would move on to filing a Level I grievance, which the Unit Administrator would need to respond to within 30 business days.  If the response to the Level I grievance was unfavorable to Plaintiffs, or untimely or absent, the Plaintiffs would then move on to the Level 2 appeal procedure, which the District Administrator would need to respond to within 30 business days.

5

## II.     Factual Allegations

Plaintiffs generally assert that they are all housed in the O-Pod housing unit at

MacDougall.  Complaint at 8, ECF No. 1.  They allege that they may only flush the toilets in

their cells twice during each five-minute period.  *Id.*  If an inmate flushes a third time during the

five-minute period, the prison staff will, allegedly, re-set the toilet to flush again an hour later.

*Id.*  They claim that the policy of not permitting them to flush the toilet any time they choose to

do so subjects them to harsh odors and the possibility of contracting unidentified illnesses.  *Id.*

They allege that inmates who have jobs in the unit are confined in cells with no limit on the

number of times the toilet may be flushed during a five-minute period.  *Id.* at 8-9.

On a weekly basis, prison staff members allegedly provide the plaintiffs with a liquid

solution and other supplies to clean their cells.  Complaint at 9.  The plaintiffs complain that the

cleaning supplies are passed through the slots in their cell doors that are also used to pass food

trays through at meal times.  *Id.* at 9-10.  They allege that this practice potentially exposes them

to contaminated food.  *Id.* at 10.

On September 9, 2016, Mr. Harvin and Mr. Hutton, who were cellmates, allegedly

reported that they needed to use the toilet, but could not flush the toilet in their cell.  Complaint

at 10.  Officers allegedly denied the requests by Mr. Harvin and Mr. Hutton to use another toilet

or to re-set the toilet in their cell.  *Id.* at 10-11.  Mr. Harvin used the toilet in the cell and he and

his roommate were allegedly subjected to the odors of defecation and urine for approximately an

hour and forty-five minutes.  *Id.*

Plaintiffs further allege that there are allegedly only five working showers available to the

approximately fifty inmates housed in the O-Pod housing unit at MacDougall.  Complaint at 11.

On September 9, 2016, Mr. Ramos attempted to use a shower on the upper tier of the housing unit.  *Id.*  An officer allegedly warned Mr. Ramos that the shower was off limits to all inmates except inmates who worked on the tier.  *Id.* at 11-12.  On September 10, 2016, Mr. Ramos submitted an inmate request regarding this matter.  *Id.*  An officer confirmed that the upper tier shower could only be used by inmates who worked on the tier.  *Id.*

On September 13, 2016, from 9 a.m. to 6 p.m., the water supply to MacDougall was allegedly shut down.  Complaint at 12.  During this time period, inmates were allegedly told to use portable sanitation units that were placed in the recreation yards.  *Id.* at 12-13.  Mr. Harvin alleges that, when he was allowed to use the portable toilet, a correctional officer would not permit him to bring soap with him to sanitize the toilet.  *Id.*  There was allegedly no anti-bacterial soap in the toilet stall.  *Id.*

When using the toilet, Mr. Harvin noticed that it had not, he alleges, been serviced in thirty-seven days.  Complaint at 12-13.  Mr. Harvin alleges that the toilet had not been serviced in a timely manner and that the number of inmates using the toilet exceeded the number recommended by the company that owned the toilet, Royal Flush.  Id.

Other than in the caption of the complaint and description of the parties, one of the Plaintiffs, Mr. Woolfolk, is not otherwise mentioned in the body of the complaint.  All four Plaintiffs claim that the Defendants have allegedly violated their Eighth and Fourteenth Amendment rights.  They seek monetary damages.  Complaint at 7.

### III.   Failure to Meet the Exhaustion Requirement

None of the Plaintiffs specifically claim, in the body of their Complaint, that they exhausted their available administrative remedies prior to filing this action.  Mr. Ramos attaches

a copy of a written CN 9601 Inmate Request Form dated September 10, 2016, which addresses his complaint that he could not use the shower on the top tier.  Complaint Ex. 1, ECF No. 1.  The request includes an undated response written on the attached CN 9601 form.  *Id.*  Plaintiffs do not otherwise attach any inmate requests, grievances or grievance appeals to their Complaint. Nor have they filed any additional exhibits or documents from the Inmate Administrative Remedies procedure.

Furthermore, given the alleged dates of the events that Plaintiffs refer to in the Complaint, the date that Plaintiffs filed the Complaint, and the time frames associated with the Inmate Administrative Remedies procedure, as described in Section I, *supra*, it is unlikely that each Plaintiff fully exhausted his available administrative remedies with regard to each of the claims alleged in the Complaint before to filing this action.  Based on the amount of time that the Department of Corrections is allowed to respond to inmates at each level of the Administrative Remedies procedure, exhausting the administrative remedies in this case could require around 75 business days.

The events that Plaintiffs allege in this complaint occurred around September 9 through September 13, 2016.  Mr. Ramos, Mr. Woolfork and Mr. Hutton signed the complaint on September 15, 2016 and Mr. Harvin signed the complaint on September 12, 2016.  The complaint was received and filed with the Court on September 26, 2016, only around two weeks after the events allegedly occurred.

Thus, it is apparent that the Complaint is subject to dismissal for failure to fully exhaust available administrative remedies prior to filing this action.  Before dismissing the complaint,

however, the Court will afford each Plaintiff an opportunity to address the exhaustion

requirement.

## IV.      Supplemental Complaints [ECF Nos. 19, 22, 24, 26]
##          Notices to Add Defendants [ECF No. 21, 29]

Mr. Harvin has filed four documents that he styles as "supplemental complaints," and

two documents that he describes as "notices to add defendants."  He is the only Plaintiff to have

signed any of these signed these documents.

A *pro se* litigant in federal court has a right to act as his or her own counsel.  *See* 28

U.S.C. § 1654 ("In all courts of the United States the parties may plead and conduct their own

cases personally.").  Mr. Harvin, as a *pro se* litigant and non-attorney, however, may not

represent the other plaintiffs or assert claims on their behalf.  *See Berrios v. N.Y. City Housing*

*Auth.*, 564 F.3d 130, 132 (2d Cir. 2009) (holding that while 28 U.S.C. § 1654 permits an

individual "to proceed *pro se* with respect to his *own* claims or claims against him personally," it

"does not permit unlicensed laymen to represent anyone else other than themselves") (internal

quotation marks omitted) (emphasis in original).

### A.      Notice to Add Defendants [ECF No. 21, 29]

Mr. Harvin seeks to add the Town of Suffield, SLOAN, and Melissa Mack, the First

Selectman of the Town of Suffield, as defendants to the action.  He cannot simply add new

defendants to the action by filing a notice.  The Court will not construe the notice as a motion for

leave to amend to add these two individuals as defendants because this action was filed by four

Plaintiffs and Mr. Harvin cannot assert claims on behalf of the other Plaintiffs.  *See Berrios*, 564

F.3d at 132.  Furthermore, the notice sets forth no facts to suggest that SLOAN is a state actor or

to support a claim of municipal liability against the Town of Suffield or its officials.

Accordingly, the Clerk of the Court is directed to strike these notices of additional defendants from the docket.

**B.      Supplemental Complaints [ECF Nos. 19, 22 24, 26]**

With regard to the four supplemental complaints, Rule 15(d) of the Federal Rules of Civil Procedure allows the Court to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  Fed. R. Civ. P. 15(d).  The Court may grant a party's motion to supplement its pleading upon "reasonable notice" and "just terms."  Fed. R. Civ. P. 15(d).  Mr. Harvin did not seek leave to file any of the supplemental complaints as required by Rule 15(d).  Thus, they were improperly filed, and can be stricken for failure to comply with Rule 15(d).

The first supplemental complaint includes a new claim related to the transfer of Mr. Harvin, Mr. Hutton and Mr. Ramos on September 27, 2016, to a housing unit at MacDougall that does not have toilets with flushing restrictions.  ECF No. 19.  Mr. Harvin seeks to add a claim of denial of equal protection under the Fourteenth Amendment with regard to the first claim in the complaint pertaining to toilet flushing restrictions in O-Pod unit at MacDougall.

The Court will not construe the first supplemental complaint as a motion for leave to file a supplemental or amended complaint because Mr. Harvin cannot assert claims on behalf of the other Plaintiffs or other inmates who may still be housed in the O-Pod housing unit.  *See Berrios*, 564 F.3d at 132.  In addition, for the reasons described in Sections I and III, *supra*, there is no indication that the equal protection claim sought to be added could have been fully or properly exhausted prior to Mr. Harvin filing the supplemental complaint on October 17, 2016 regarding an event that occurred on September 27, 2016, less than three weeks prior.

The second supplemental complaint only includes a request to add the Connecticut Department of Correction as a defendant.  ECF No. 22.  The Court will not construe the supplemental complaint as a motion for leave to amend because amendment would be futile, as the Connecticut Department of Correction is not a person for the purposes of 42 U.S.C. § 1983 ("Section 1983") and is therefore not subject to suit.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, (1989) (state and state agencies not persons within meaning of 42 U.S.C. § 1983); *Bhatia v. Connecticut Dep't of Children & Families*, 317 F. App'x 51, 52 (2d Cir. 2009) (summary order) ("The named defendant, as a state agency, is not susceptible to liability under [S]ection 1983 . . . because such an agency is not a 'person' within the meaning of that statute."); *Gaby v. Board of Trustees of Community Technical Colleges*, 348 F.3d 62, 63 (2d Cir. 2003) (per curiam) (noting decisions holding that state universities and their boards of trustees are not persons within the meaning of section 1983); *Santos v. Dep't of Corr.*, 3:04-CV-1562 (JCH) (HBF), 2005 WL 2123543, at *3 (D. Conn. Aug. 29, 2005) (observing that "[n]either a Department of Correction nor a correctional institution is a person" subject to liability under Section 1983).  Thus, to permit Mr. Harvin to add the Department of Correction as a defendant would be futile.

The third supplemental complaint seeks to add a claim of denial of access to the courts and a claim of a violation of equal protection of the laws related to Mr. Harvin's claim that he has not received any notices of electronic filing from this court regarding documents that may have been filed in this case.  ECF No. 24.  Mr. Harvin claims that Counselor Hess is responsible for distributing the notices of electronic filing to inmates at MacDougall and seeks to add him or her as a defendant.

The Court will not construe the third supplemental complaint as a motion for leave to file a supplemental or amended complaint because Mr. Harvin cannot assert claims on behalf of the other Plaintiffs. *See Berrios*, 564 F.3d at 132. In addition, for the reasons described in Sections I and III, *supra*, there is no indication that the equal protection or access to courts claims sought to be added could have been fully or properly exhausted prior to the filing of the supplemental complaint on November 21, 2016.

Furthermore, the claims are unrelated to the claims in the complaint. *See LaBarbera v. Audax Construction Corp.*, 971 F. Supp. 2d 273, 285 (E.D.N.Y. 2013) (denying motion to amend or supplement complaint on ground that new claims sought to be added involved issues that were "wholly unrelated" to the resolution of claims included in the complaint) (citations omitted); *Walls v. Fischer*, 615 F. Supp. 2d 75, 285 (W.D.N.Y. 2009) (denying motion to file supplemental complaint because new claims concerned incidents at a different correctional facility, involved different correctional staff members than the defendants named in the complaint "and only tangentially relate[d] to the matters asserted in the [complaint]") (citations omitted).

The fourth supplemental complaint seeks to clarify the first four claims in the original complaint to assert violations of the Eighth Amendment's protection against cruel and unusual punishment and to clarify that the first and fourth claims also assert violations of the Fourteenth Amendment's right to equal protection. ECF No. 26. In addition, the plaintiff seeks to add the Town of Suffield and the Department of Correction as defendants and to assert Eighth Amendment claims against them.

The Court will not construe the fourth supplemental complaint as a motion for leave to file a supplemental complaint because only Mr. Harvin signed the supplemental complaint and

he cannot assert claims on behalf of the other plaintiffs.  *See Berrios*, 564 F.3d at 132.

Moreover, the claims sought to be added are not supplemental to the claims in the complaint and

it is already apparent that the claims asserted in the complaint include violations of the Eighth

and Fourteenth Amendments.  Furthermore, as explained above, the plaintiff has set forth no

basis to permit him to add the Department of Correction and the Town of Suffield as defendants.

Thus, to permit him to do so would be futile.

     For the reasons stated above, the Clerk of the Court is directed to strike all four

supplemental complaints and the notices to add new defendants from the docket.

**V.**    **Conclusion**

     For the foregoing reasons, the Plaintiffs, Mr. Harvin, Mr. Ramos, Mr. Woolfork and Mr.

Hutton shall **each file a response to this order with regard to their attempts to exhaust**

**administrative remedies before filing this action.  The responses shall be filed within twenty**

**(20) days of the date of this order.**  Failure to comply with this order by any Plaintiff will result

in dismissal of this action as to that Plaintiff without further notice from the court.  Any such

dismissal would be without prejudice to renewal if that Plaintiff subsequently files a new action

after fully exhausting his administrative remedies.

     In view of this order, Mr. Harvin's Motion to Have Complaint Served, **ECF No. 20**, is

**DENIED** and the Motions for Appointment of Counsel, **ECF Nos. 6, 7, 8, 9**, are **DENIED**

without prejudice.

     The Clerk is directed to **STRIKE** the Notices of Additional Defendants, **ECF Nos. 21,**

**29**, the Supplemental Complaints, **ECF Nos. 19, 24, 26**, and the Second Proposed Supplemental

Complaint, **ECF No. 22**, from the docket.

SO ORDERED this 9th day of December, 2016 at Bridgeport, Connecticut.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge